IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

HARRY L. ALLEN                                                                                    PLAINTIFF
ADC #73791

V.                                              NO. 4:03CV00507 JWC

RANDY MUNNERLYN, et al                                                              DEFENDANTS

MEMORANDUM OPINION AND ORDER

On October 22, 2004, Defendants filed a motion for summary judgment and brief in support (docket entries #29, #30) seeking to dismiss Plaintiff's 42 U.S.C. § 1983 complaint on the following grounds: (1) they are entitled to sovereign immunity; (2) Plaintiff has failed to establish a custom or policy of Prairie County that violated his constitutional rights; (3) Plaintiff is unable to establish that he suffered from a serious medical condition; and (4) their actions did not rise to the level of deliberate medical indifference.  Defendants also filed a statement of undisputed material facts in support of, and as part of, their motion (docket entry #29) pursuant to Local Rule 56.1 of the Rules of the United States District Court for the Eastern District of Arkansas.  Plaintiff has filed numerous pleadings in response (docket entries #32, #33, #34, #35).  In addition, on June 2, 2005, Defendants filed a motion to supplement exhibits (with properly submitted sworn affidavits) in support of their summary judgment motion (docket entry #39).  This was done after Plaintiff had correctly pointed out Defendants' original summary judgment defect (see docket entries #32, #33, #34).  Although Plaintiff has requested that the Court exclude Defendants' summary judgment evidence (see docket entry #38), such a ruling would not only be unjust but would serve no legitimate purpose.  Moreover, the same leniency would have been provided to Plaintiff had he failed to comply with a technical requirement.

**I. Background**

Plaintiff is a pro se inmate who is currently confined to the Diagnostic Unit of the Arkansas Department of Correction ("ADC"). According to his complaint (docket entry #2), on November 13, 2002, he was in the custody of the Prairie County Sheriff when he was taken to the White County Medical Center by Defendant Holmes due to severe abdominal pain, vomiting, and dizziness. Plaintiff alleges that Dr. David Staggs examined him and diagnosed a gallbladder infection, gallstones, and acute Type II diabetes. Plaintiff further alleges that Dr. Staggs advised Defendant Holmes that immediate gallbladder surgery was required. Defendant Holmes contacted the sheriff (former Defendant Raper)[1] who allegedly refused to pay for Plaintiff's surgery because he belonged to the ADC.[2] Plaintiff remained in the White County Medical Center for three days until his infection was under control. When he was released back to the sheriff, Plaintiff claims he was held an additional thirty days and when his infection flared up again, was "dumped" into the ADC. He sues for deliberate indifference to his serious medical needs and gross negligence to his pain and suffering.

---

[1] On June 17, 2004, Defendants filed a suggestion of death (docket entry #24) indicating that Defendant Raper had died in November 2003. Plaintiff sought compensatory and punitive damages from Defendants in an official capacity only. "When a public officer is a party to an action in his official capacity and during its pendency dies, . . . the action does not abate and the officer's successor is automatically substituted as a party." See Fed. R. Civ. P. 25(d). For this reason, interim Sheriff Riley Seevers was originally substituted as a Defendant in place of Defendant Raper (docket entry #25). When Randy Munnerlyn was elected to replace acting Sheriff Riley Seevers, Defendants filed a motion to substitute (docket entry #36). By order entered April 1, 2005 (docket entry #37), Sheriff Randy Munnerlyn was substituted as a Defendant in place of Sheriff Riley Seevers.

[2] Plaintiff's own allegations corroborate this statement— he claims he was convicted on October 18, 2002.

## II.  Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999).  A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial. Celotex, 477 U.S. at 322-23. To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. Id. at 324; Fed. R. Civ. P. 56(e).  A nonmovant has an obligation to present affirmative evidence to support his claims. Settle v. Ross, 992 F.2d 162, 163-64 (8th Cir. 1993).  A litigant's verified complaint is generally considered an affidavit for purposes of summary judgment. Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994).  Moreover, pro se complaints must be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## III.  Analysis

**A.   Deliberate Medical Indifference**

To prevail on his claim of deliberate medical indifference, Plaintiff must allege acts or omissions by Defendants "sufficiently harmful to evidence deliberate indifference to [his]

serious medical needs." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The Eighth Circuit has interpreted this standard to include both objective and subjective components: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Jolly, 205 F.3d at 1096 (citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)); see also Stetter v. Riddick, 6 Fed. Appx. 522 (8th Cir. 2001) (unpub. per curiam) (citing Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997)). This standard has been well settled for some time and Plaintiff's burden is substantial. In determining whether Defendants were deliberately indifferent to his serious medical needs, Plaintiff must demonstrate "more than negligence, more even than gross negligence." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Moreover, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Id.

First, Plaintiff must establish that he suffered from an objectively serious medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or if it is so obvious that even a lay person would recognize the necessity for a physician's treatment. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); see also Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999). Next, Plaintiff must establish that Defendants were (1) personally aware of his serious medical needs; and (2) deliberately disregarded those needs. Coleman, 114 F.3d at 785-86.

The evidence in support of Defendants' motion indicates that Plaintiff was admitted to the White County Hospital on November 14, 2002, with generalized aches, chills, nausea, and vomiting. It was noted that he had experienced a forty-pound weight loss over

the previous three to four months. He was under the care of two physicians, Dr. J. Aaron Little (a surgeon) and Dr. Dan Davidson (a family physician). According to Dr. Little (see docket entry #29, Exhibit 1 & docket entry #39, Exhibit A), Plaintiff was found to have diabetes mellitus that had not been previously diagnosed and was in diabetic ketoacidosis when he was admitted. Dr. Little attributed all of Plaintiff's presenting symptoms to his undiagnosed diabetes. During Plaintiff's initial evaluation, an ultrasound did show gallstones and possible fluid around the gallbladder; however, neither his symptoms nor past medical complaints were consistent for typical gallbladder disease. Dr. Little did not believe Plaintiff's gallstones were symptomatic in any way and did not represent a component of his presenting illness. On Plaintiff's chart he noted: "if gallbladder symptoms develop we will proceed with cholecystectomy but I think the current medical situation needs to be stabilized." On subsequent visits Plaintiff improved with care of his diabetes, denied abdominal pain, and had no objective abdominal tenderness on serial exams. Dr. Little's final note states: "no immediate plans for surgery, would discharge to the Arkansas Department of Corrections when diabetes mellitus stabilized." Dr. Davidson (see docket entry #29, Exhibit 2 & docket entry #39, Exhibit B) indicates that as a family physician he was not in a position to determine whether Plaintiff required gallbladder surgery which is why he was referred to Dr. Little, a surgeon.

     Defendants assert that Plaintiff has failed to establish that he suffered from an objectively serious medical need with respect to his gallstones. A medical need is serious if it has been diagnosed by a physician as mandating treatment. The evidence indicates that in addition to undiagnosed diabetes, Plaintiff was diagnosed with gallstones and possible fluid around the gallbladder. Even if the treatment mandated was to monitor the

gallbladder situation, that monitoring constitutes a form of treatment. Thus, Plaintiff must only establish that Defendants were personally aware of his serious medical needs and deliberately disregarded those needs. This Plaintiff cannot do.

Obviously, Defendants were aware of Plaintiff's medical needs; however, it simply cannot be said that they deliberately disregarded those needs. Plaintiff was transported to the hospital when intervention became necessary. He received medical intervention. He was also returned for follow-up appointments. Plaintiff points to his hospital discharge summary in support of his contention that gallbladder surgery was required and denied (see docket entry #32, Exhibit 3). According to Plaintiff it was noted that he would receive surgery when he stabilized. In fact, the discharge summary notes that Dr. Little had determined that Plaintiff's diabetes should be focused on over his gallbladder and states: "[H]e would receive surgery when he stabilized at a later [date][3] and at this point on 11/17 he was stable for discharge to home." His discharge instructions note follow-up with the surgeons in one week and follow-up in the clinic in one week. According to Dr. Little, on subsequent visits Plaintiff improved, denied abdominal pain, and had no objective abdominal tenderness when examined. The typewritten summary to which Plaintiff refers lists his physician as David Staggs but contains a signature line for both Denise Nance, R.N. and Dan Davidson, M.D. It is unsigned. What is clear is that it was not dictated by his treating specialist, Dr. Little, who made the initial diagnosis and continued follow-up care. Moreover, Dr. Davidson has indicated that he made no decision as to whether

---

[3] The original notation contains the word "diet."

gallbladder surgery was indicated.  In sum, Plaintiff's disagreement with his treatment decisions simply does not rise to the level of a constitutional violation.

Plaintiff's contention that Defendants requested that he be committed to the ADC because of gallstones in an effort to delay surgery is also without merit.  In support of this contention, Plaintiff refers to a fax addressed to ADC new commitments that states: "This inmate is in the hospital at this time with diabetic ketoacidosis and gallstones.  Please fast-track this one" (see docket entry #32, Exhibit 2).  By Plaintiff's own admission, he had already been convicted by the time he was treated at the White County Hospital; therefore, his placement into the ADC was imminent.  Furthermore, the treating surgeon determined that his symptoms were the result of undiagnosed diabetes, not a gallbladder infection.  Lastly, following his hospitalization and initial treatment for diabetes, he had no complaints that could be attributed to a problem with his gallbladder.

Plaintiff further contends that Defendants' actions of placing him in the ADC resulted in the delay of his needed surgery for two years (see docket entries #33, #35).  According to Plaintiff, upon his arrival at the ADC he received a physical and it was assessed that he did need surgery.  On approximately November 22, 2004, two years after his admission to the White County Hospital, Plaintiff's gallbladder was removed at Southwest Hospital in Little Rock by Dr. Buckman (see docket entry #35).   When an inmate is complaining about a delay in treatment, as Plaintiff herein is, the objective "seriousness" of the deprivation must be measured by reference to the *effect* of any delay. Coleman, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)).  To succeed on his claim, Plaintiff must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment, i.e., that Defendants ignored a critical or

escalating situation, or that the delay adversely affected his prognosis. Id.; Beyerbach v. Sears, 49 F.3d 1324, 1326-27 (8th Cir. 1995).[4] There has been no evidence submitted to substantiate Plaintiff's claim that upon his arrival at the ADC he was assessed as needing gallbladder surgery. Nor has Plaintiff bothered to even explain, much less provide evidence of, how this claimed two-year delay adversely affected his prognosis. Because Plaintiff has failed to meet his burden, summary judgment is appropriate.

**B.   Alternate Grounds**

Alternate grounds additionally mandate the dismissal of Plaintiff's case. Public officials may be sued under § 1983 in either their official or individual capacity, or both. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). To sue a public official in his individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise it will be assumed that the defendant is being sued only in an official capacity. Id.

Plaintiff seeks $100,000 in compensatory and $100,000 in punitive damages from Defendants in an official capacity. Defendants have raised and placed Plaintiff on notice of this issue in their summary judgment motion. Plaintiff has nevertheless reiterated his intention to sue only in an official capacity (see docket entry #34, ¶1);[5] thus, his claim for monetary damages against Defendants is barred.

---

[4] See also the following unpublished cases of Jackson v. Hallazgo, 30 Fed. Appx. 668 (8th Cir. Mar. 6, 2002) (unpub. per curiam) (citing Coleman, 114 F.3d at 784) ("[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); O'Neal v. White, 221 F.3d 1343 (8th Cir. July 12, 2000) (unpub. per curiam) (citing Crowley, 109 F.3d at 502) (concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim").

[5] "The Plaintiff suing the Defendants in their official capacities is undisputed."

The Eleventh Amendment bars a citizen from bringing suit in federal court against a state, a state agency, or a state official sued in his official capacity for monetary damages which must be paid from public funds in the state treasury. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Barnes v. State of Missouri, 960 F.2d 63, 64 (8th Cir. 1992) (per curiam); Nix v. Norman, 879 F.2d 429, 431-32 (8th Cir. 1989). However, a state official may nevertheless be sued in an individual capacity for action taken in an official capacity and such a claim is not barred by the Eleventh Amendment. Hafer v. Melo, 502 U.S. 21, 25 (1991). Only two exceptions exist to Eleventh Amendment immunity: (1) "where Congress has statutorily abrogated such immunity by 'clear and unmistakable language,'" or (2) where a state has waived its immunity to suit in federal court, but "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." Barnes, 960 F.2d at 64-65 (citing Welch v. Texas Dep't of Highways & Pub. Transp., 483 U.S. 468, 473-74 (1987)). Neither exception is applicable to Plaintiff's case. See Will, 491 U.S. at 66.

A suit against a county official in his official capacity (as is the case herein) is the equivalent to a suit against the county itself. Doe v. Washington County, 150 F.3d 920, 923 (8th Cir. 1998) (citing Parrish v. Luckie, 963 F.2d 201, 203 n.1 (8th Cir. 1992); Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Plaintiff may not generally hold a political subdivision vicariously liable under § 1983 for the unconstitutional acts of its employees. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535-36 (8th Cir. 1999) (citing Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978)). Only when those acts implement or execute an unconstitutional policy or custom, may a political

subdivision then be held liable.  Id.; Yellow Horse v. Pennington County, 225 F.3d 923, 928 (8th Cir. 2000) ("In a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality").  The Eighth Circuit has defined "policy" as "an official policy, a deliberate choice of a guiding principle or procedure made by an official with authority" (see Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) and "custom" as a "persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization" (see Johnson, 172 F.3d at 536).

In order to subject Prairie County to § 1983 liability, Plaintiff must show that he has sufficiently pled that the county had a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue.  Since he cannot establish this, even if he could subsequently prevail on his claims, he can be afforded no relief.

### IV.  Conclusion

In accordance with the above, IT IS, THEREFORE, ORDERED that:

1. Defendants' motion for summary judgment (docket entry #29) is GRANTED, dismissing Plaintiff's complaint in its entirety, with prejudice.

2. All pending motions are DENIED AS MOOT.

3. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from this memorandum opinion and order and any judgment entered hereunder, would not be taken in good faith.

IT IS SO ORDERED this 18th day of August, 2005.

_____
UNITED STATES MAGISTRATE JUDGE